## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISOPHER HOOD           **:**

                           **:**     No. 17-CV-00275-RDM

         v.              **:**

                           **:**     Jury Trial Demanded

TERRENCE SELLERS and       **:**

CASSIDYS TRANSFER         **:**

## <u>ORDER</u>

      AND NOW, this     day of           , 2018, upon consideration of Defendants'

Motion in Limine to Preclude the Testimony of Plaintiff's Expert, Kevin Lacey, it is hereby

ORDERED and DECREED that said Motion is GRANTED. Kevin Lacey is hereby precluded

from testifying at the trial of this matter.

                    **BY THE COURT:**

                    _____

                    **JOSEPH F. SAPORITO, JR.**

                    **United States Magistrate Judge**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHRISOPHER HOOD            :
                          :        No. 17-CV-00275-RDM
        v.                :
                          :        Jury Trial Demanded
TERRENCE SELLERS and       :
CASSIDYS TRANSFER          :

<u>**DEFENDANTS' MOTION IN LIMINE TO PRECLUDE THE TESTIMONY OF
PLAINTIFF'S EXPERT, KEN LACEY**</u>

Defendants, Terrence Sellers and Cassidys Transfer (hereinafter "Moving Defendants"),

file this Motion in Limine, and in support thereof, hereby aver as follows:

1.       The instant case arises out of a motor vehicle accident that occurred on Monday,

January 18, 2016 at approximately 10:00 p.m. on Interstate 81 approximately 500 feet from the

Exit 12NB ramp in Cortlandville, NY. *See* Plaintiff's Complaint attached hereto as Exhibit "A".

2.       Plaintiff asserts claims for negligence/recklessness (Count I); vicarious liability

(Count II); and reckless hiring/supervision/retention (Count III).

3.       Plaintiff produced the expert reports of Kevin Lacey, a purported trucking expert.

*See* May 16, 2018 and June 4, 2018 reports attached hereto as Exhibits "B" and "C",

respectively.

4.       Mr. Lacey makes numerous references to the New York Commercial Drivers

Manual (hereinafter "Manual") and ultimately concludes that Defendant Sellers "failed to

demonstrate the proper knowledge and skills…required by" the Manual. <u>Id</u>. at p. 4.

5.       Mr. Lacey concludes that Sellers failed to comply with Manual Parts 2.6.2, 2.6.4

and 2.8.4 regarding driving in hazardous conditions and that Defendant Cassidys failed to train

him on same. Exhibit "B" at pp. 4 and 5. He also concludes that Defendant Sellers should have

been familiar with the Quebec Driver Manual regarding vehicle speed and road conditions. Exhibit "C" at p. 2-3.

6.      Mr. Lacey opines that Cassidys' failure to properly train with regard to these manuals was reckless and dangerous. Exhibit "B" at pp. 6 and 7 and Exhibit "C" at p. 3.

7.      Moving Defendants hereby move for preclusion Mr. Lacey's testimony at the trial of this matter.

8.      Initially, conclusions and opinions regarding recklessness are improper and exceed the scope of the expert's role as they project legal conclusions, resulting in the usurpation of the exclusive role of the trier of fact.

9.      With regard to the remainder of Mr. Lacey's proposed testimony, it should be precluded for failure to satisfy the requirements of Daubert.

10.     In order to be admissible, expert testimony must be "not only relevant, but reliable." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993).

13.     Mr. Lacey must be precluded from testifying because his testimony serves no valid evidentiary purpose, is unreliable, would interfere with the Court's authority to instruct the jury as to controlling law; and is confusing, misleading and otherwise unfairly prejudicial.

14.     Mr. Lacey does not seek to offer an opinion, but a commentary on the evidence that would not serve to assist the jury.

15.     The vast majority of Mr. Lacey's report involves commentary on the nature and meaning of New York's Commercial Driving Manual and the Quebec Driver's Manual and Defendants' alleged violations of the Manuals which runs afoul of the rule prohibiting opinions of expert witnesses to invade the province of the Court.

16.     Mr. Lacey attempts to opine that Moving Defendants deviated from the standard of care by violating these manuals. If such deviations did occur, which Moving Defendants specifically deny, it is for the Court to determine the applicable law and properly instruct the jury.

17.     There are no driving rules, requirements, or regulations published within either Manual. These Manuals contain neither the rules of the road nor a standard of care. The contents of these Manuals have never been codified into New York's Vehicle and Traffic Code by the state's legislature. Similarly, the contents of these Manuals have never been incorporated as part of the Federal Motor Carrier Safety Regulations.

18.     Thus, Mr. Lacey's testimony is irrelevant and inadmissible and should be precluded.

19.     Based on the foregoing, Mr. Lacey should be precluded from testifying as to the purpose and meaning of the New York Commercial Driver's Manual and from opining that moving Defendants violated the Manual.

**WHEREFORE**, Defendants, Terrence Sellers and Cassidys Transfer, hereby respectfully request that this Court enter an Order precluding Kevin Lacey, from offering expert testimony at trial.

Respectfully Submitted,
**HENDRZAK & LLOYD**

_/s/ Maureen A. Jordan_
MAUREEN A. JORDAN, ESQUIRE
Attorney ID # 54629
*Attorney for Defendants*
3701 Corporate Parkway, Suite 100
Center Valley, PA  18034
Tel:  (610) 709-8579
Fax:  (610) 709-8560
Dated:  July 2, 2018                                     Email:  maureen.jordan@zurichna.com

# EXHIBIT "A"

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
### for the

| | |
|---|---|
| Christopher Hood | ) |
| *Plaintiff* | ) |
| v. | ) |
| Terrence Sellers and Cassidys Transfer | ) |
| *Defendant* | ) |

Civil Action No.   3:17-CV-00275

## WAIVER OF THE SERVICE OF SUMMONS

To:   Molly Dempsey Clark
      *(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____03/27/2017_____, the date when this request was sent (or 90 days if it was sent outside the United States).  If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

| | |
|---|---|
| | _____ |
| | *Signature of the attorney or unrepresented party* |
| _____Cassidy's Transfer_____ | |
| *Printed name of party waiving service of summons* | _____ |
| | *Printed name* |
| | |
| | _____ |
| | *Address* |
| | |
| | _____ |
| | *E-mail address* |
| | |
| | _____ |
| | *Telephone number* |

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

**SUMMARY OF THE DOCUMENT TO BE SERVED**

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965

(Article 5, fourth paragraph)

**Identity and address of the addressee**

Cassidys Transfer
1001 Mackay Street
Pembroke, Ontario
K8A6XY

**IMPORTANT**

THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE 'SUMMARY OF THE DOCUMENT TO BE SERVED' WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULLY. IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.

IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.

ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO: . . .

It is recommended that the standard terms in the notice be written in English and French and where appropriate also in the official language, or one of the official languages of the State in which the document originated. The blanks could be completed either in the language of the State to which the documents is to be sent, or in English or French.

EI-1 (2009-08)

# UNITED STATES DISTRICT COURT
### for the
## MIDDLE DISTRICT OF PENNSYLVANIA

**CHRISTOPHER HOOD**

*Plaintiff*

v.

**TERRENCE SELLERS, ET AL.**

*Defendant*

Civil Action No.:
**3:17−CV−00275−RDM**
Hon. Robert D. Mariani

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

        SEE COMPLAINT

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) —— or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) —— you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

        Edward J. Ciarimboli
        Fellrman Law, P.C.
        183 Market St.
        Kirby Park Commons
        Suite 200
        Kingston, PA 18704

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



**PETER J. WELSH**

*ACTING CLERK OF COURT*

s/ − Ed Petroski

*Signature of Clerk or Deputy Clerk*

ISSUED ON 2017−02−14 16:37:59.0, Acting Clerk USDC MDPA

JS 44 (Rev. 08/16)

Case 3:17-cv-00275-RDM Document 1-1 Filed 02/14/18 Page 1 of 2
Case 3:17-cv-00275-RDM Document 1-1 Filed 02/02/18 Page 9 of 36

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Christopher Hood

**(b)** County of Residence of First Listed Plaintiff    Luzerne County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Fellerman & Clarimboli
183 Market Street, Ste 200, Kingston, PA 18704
(570) 718-1444

## DEFENDANTS

Terrance Sellers and Cassidys Transfer

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
      THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product    Product Liability | |    28 USC 157 |    3729(a)) |
| ☐ 140 Negotiable Instrument |    Liability   ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &    Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
|    & Enforcement of Judgment |    Slander    Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted |    Liability   ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 460 Deportation |
|    Student Loans | ☐ 340 Marine    Injury Product | | | ☐ 470 Racketeer Influenced and |
|    (Excludes Veterans) | ☐ 345 Marine Product    Liability | **LABOR** | **SOCIAL SECURITY** |    Corrupt Organizations |
| ☐ 153 Recovery of Overpayment |    Liability   **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
|    of Veteran's Benefits | ☒ 350 Motor Vehicle   ☐ 370 Other Fraud |    Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract |    Product Liability   ☐ 380 Other Personal |    Relations | ☐ 864 SSID Title XVI |    Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal    Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |    Injury   ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury -    Product Liability |    Leave Act | | ☐ 893 Environmental Matters |
| |    Medical Malpractice | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** |    Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** |    Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | |    or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party |    Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/    Sentence | |    26 USC 7609 |    Agency Decision |
| ☐ 245 Tort Product Liability |    Accommodations   ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty | **IMMIGRATION** | |    State Statutes |
| |    Employment    **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| |    Other   ☐ 550 Civil Rights |    Actions | | |
| | ☐ 448 Education   ☐ 555 Prison Condition | | | |
| |    ☐ 560 Civil Detainee - | | | |
| |    Conditions of | | | |
| |    Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from Another District *(specify)*
- ☐ 6   Multidistrict Litigation - Transfer
- ☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
1. 28 U.S.C. §1332
Brief description of cause:
Motor vehicle accident

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $        CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE        DOCKET NUMBER

DATE
02/14/2017

SIGNATURE OF ATTORNEY OF RECORD
Molly D. Clark, Esquire

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**FELLERMAN & CIARIMBOLI LAW**
Kirby Park Commons
183 Market Street, Suite 200
Kingston, PA 18704
(570) 718-1444
(570) 714-7255 (FAX)
www.714HURT.com

Edward J. Ciarimboli, Esquire
ID# 85904
ejc@714HURT.com

Gregory E. Fellerman, Esquire
ID# 81568
gef@714HURT.com

Molly Dempsey Clark, Esquire
ID# 89367
mclark@fclawpc.com

## UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER HOOD

Plaintiff

v.

TERRENCE SELLERS and
CASSIDYS TRANSFER

Defendants

CIVIL ACTION – LAW

JURY TRIAL DEMANDED

NO.

## COMPLAINT

AND NOW COMES the Plaintiff, Christopher Hood, by and through his

legal counsel, Fellerman & Ciarimboli Law, P.C., to hereby complain against the

above named Defendants, and aver as follows:

## PARTIES

1. Plaintiff Christopher Hood is an adult individual who resides at 215

Overbrook Road Dallas, Luzerne County, Pennsylvania 18612 ("Plaintiff").

2.  Defendant Terrence Sellers is an adult individual who resides at 669 Rue Bergeron, Gatineau, Quebec City, Canada J8L2B4 ("Defendant Sellers").

3.  Defendant Cassidys Transfer, Storage Limited (USDOT# 163123/MC# 250053) is a Canadian company with its headquarters at 1001 Mackay Street, Pembroke, Ontario, Canada K8A6X7 ("Cassidys Transfer").

4.  At all relevant times, Defendant Sellers was the agent, servant, workman, and/or employee of Defendant Cassidys Transfer, and was acting in the course and scope of his employment.

5.  At all relevant times, and based upon information and belief, Defendant Sellers was operating a 1996 freightliner with plate # 2833PM owned by Cassidys Transfer ("Freightliner").

6.  At all relevant times, Defendant Sellers and Defendant Cassidys Transfer held themselves out as competent, skilled, licensed and registered in accordance with the Federal Motor Carrier Regulations.

## JURISDICTION

7.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because (a) there is complete diversity of citizenship between Plaintiff and Defendants; and (b) the matter in controversy exceeds the jurisdictional limit.

## BACKGROUND

8. On January 18, 2016, sometime before 8:09 p.m., Plaintiff was operating his 2001 Acura plate #JRX8035 ("Acura") traveling North on Interstate 81 ("I81") near Exit 12 in Cortlandville, Cort County, New York.

9. At the aforementioned date, place and time, due to the inclement weather and road conditions, Plaintiff lost control of his Acura causing him to come to rest on the northbound berm of I81.

10. At approximately 8:09 p.m., Defendant Sellers -- while operating the Freightliner owned by Defendant Cassidys Transfer as set forth above in his capacity as agent, servant, workman, and/or employee of Defendant Cassidys Transfer -- was entering I81 via the 12 Northbound Exit Ramp.

11. At the aforementioned date, place and time, while safely and properly stopped on the berm of I81, Plaintiff was violently struck from behind by Defendant Sellers, causing the Plaintiff to suffer very serious and permanent injuries as outlined herein ("Crash").

12. It was dark, foggy, raining and snowing at the time of the Crash and Defendant Sellers was driving at an unsafe rate of speed; improperly utilizing his jake brakes and/or engine brakes; and otherwise operating the Freightliner in an unsafe and reckless manner in violation of the Federal Motor Carrier Regulations as set forth in detail herein.

13. At all relevant times hereto, Plaintiff acted in a safe, prudent and reasonable manner and in no way contributed to his injuries or damages.

## COUNT I
## NEGLIGENCE / RECKLESSNESS
## CHRISTOPHER HOOD v. TERRENCE SELLERS

14. The preceding paragraphs are incorporated herein by reference as though fully set forth.

15. The negligence, carelessness and/or recklessness of Defendant Sellers, individually and as the agent, servant, worker and/or employee of Defendant Cassidys Transfer, consisted of, but is not limited to the following:

A. Failing to maintain proper and adequate control of his Freightliner so as to avoid crashing into Plaintiff;

B. Driving carelessly in disregard for the safety of others, including Plaintiff;

C. Failing to pay proper attention while operating his Freightliner on I81;

D. Failing to take proper precautions in the operation of his Freightliner so as to avoid the Crash;

E. Operating his Freightliner in a negligent, careless and reckless manner without due regard for the rights and safety of Plaintiff;

F. Utilizing the Freightliner's jake breaks and/or engine brakes in hazardous extreme weather;

G. Failing to exercise due care and caution under all of the existing circumstances;

H. Failing to have his Freightliner unit under such control that it could be readily stopped, turned aside or the speed thereof slackened upon the appearance of danger;

I. Failing to remain alert;

J. Traveling at an unsafe rate of speed under the circumstances;

K. Violating the applicable rules, regulations and laws pertaining to the safe and proper operation of motor vehicles and/or tractor trailer units;

L. Failing to operate his Freightliner in accordance with the Federal Motor Carrier Safety Regulations;

M. Failing to properly control his Freightliner unit in light of the circumstances then and there existing, including night operations in the rain/snow;

N. Failing to make necessary and reasonable observations while operating his Freightliner;

O. Failing to take evasive action and/or failing to take appropriate and timely evasive action in order to avoid striking the vehicle operated by the Plaintiff;

P. Failing to timely and properly apply his brakes;

Q. Violating FMCSA Regulation 383 dealing with required knowledge and skills;

R. Consciously choosing to drive over the speed limit at night in the rain/snow;

S. Consciously choosing to use jake breaks in the rain/snow;

T. Consciously refusing to adjust speed in response to weather;

U. Consciously choosing to otherwise violate §392.14 regarding driving in hazardous conditions with extreme caution;

V.   Failing to see and pay proper attention to other vehicles, including Plaintiff;

W.   Failing to perform proper pre-trip inspection;

X.   Violating both the written and unwritten policies, rules, guidelines and regulations of Defendant Cassidys Transfer;

Y.   Failing to apprise himself of and/or abide by the Federal Motor Carrier Safety Regulations;

Z.   Failing to apprise himself of and/or abide by the regulations and laws pertaining to the operation of commercial vehicles;

AA. Violating FMCSA Regulation 395 dealing with hours of service;

BB. Failing to adhere to the amount of driving hours limit;

CC. Striking Plaintiff's vehicle due to being on the road for more than the regulated amount of hours;

DD. Consciously choosing to drive over the regulated amount of hours;

EE. Consciously choosing not to pull his Freightliner over when the regulated amount of hours on the road was met;

FF.  Acting with a conscious disregard for the rights and safety of Plaintiff; and

GG. Failing or consciously choosing not to follow the Commercial Driver's Manual as it relates to matching speed to road surface.

16. As a direct and proximate cause of the negligence and/or recklessness of Defendant Sellers, Plaintiff suffered the following injuries:

A. Multiple fractures;

B. Cervical fracture at C7;

C. Lumbar fracture at L2;

D. Thoracic sprain/strain;

E. Displaced left femoral neck fracture with subtrochanteric extension;

F. Left pelvic ring fracture;

G. Left displaced comminuted intertrochanteric femur fracture;

H. Radiculopathy;

I. Limited range of motion;

J. Scarring;

K. Limitation of activities; and

L. All other injuries, pain and limitations stemming from said injuries.

17. As a result of the aforesaid injuries, and the natural consequences thereof, Plaintiff, as of the time of the filing of this Complaint, has required treatment from, and continues to require treatment for the aforesaid injuries and the natural consequences thereof.

18. All of the treatment for Plaintiff's injuries and the natural consequences thereof, has been deemed reasonable and necessary.

19. As a result of the aforesaid injuries, and the natural consequences thereof, Plaintiff has sustained a loss of the everyday pleasures and enjoyments of life, and may continue to suffer the same for an indefinite period of time into the future.

20. As a result of the aforesaid injuries, and the natural consequences thereof,

Plaintiff has sustained embarrassment and humiliation and may continue to suffer the same for an indefinite period of time into the future.

21. As a result of the aforesaid injuries, and the natural consequences thereof, Plaintiff has suffered physical and mental pain and suffering and may continue to suffer the same for an indefinite period of time into the future.

22. As a result of the aforesaid injuries, and the natural consequences thereof, Plaintiff has been obligated to expend various sums of money and incur various expenses for medical treatment and may be obligated to do so into the future.

23. As a result of the aforesaid injuries, and the natural consequences thereof, Plaintiff has sustained an impairment of his earning capacity/potential.

**WHEREFORE**, the Plaintiff, Christopher Hood, hereby seeks all damages allowed under the laws of the Commonwealth of Pennsylvania in addition to punitive damages from the Defendant, Terrence Sellers, under the applicable statutes of the Commonwealth of Pennsylvania, New York and the Federal and Middle District Rules of Court.

## COUNT II
## NEGLIGENCE / RECKLESSNESS
## CHRISTOPHER HOOD v. CASSIDYS TRANSFER as being vicariously liable for Terrnece Sellers

24. The preceding paragraphs are incorporated herein by reference as though fully set forth.

25. The negligence, carelessness, and/or recklessness of Defendant Cassidys Transfer, as being vicariously liable for the actions of Defendant Sellers, consisted of, but is not limited to the following:

A. Failing to maintain proper and adequate control of his Freightliner so as to avoid crashing into Plaintiff;

B. Driving carelessly in disregard for the safety of others, including Plaintiff;

C. Failing to pay proper attention while operating his Freightliner on I81;

D. Failing to take proper precautions in the operation of his Freightliner so as to avoid the Crash;

E. Operating his Freightliner in a negligent, careless and reckless manner without due regard for the rights and safety of Plaintiff;

F. Utilizing the Freightliner's jake brakes and/or engine brakes in hazardous extreme weather;

G. Failing to exercise due care and caution under all of the existing circumstances;

H. Failing to have his Freightliner unit under such control that it could be readily stopped, turned aside or the speed thereof slackened upon the appearance of danger;

I. Failing to remain alert;

J. Traveling at an unsafe rate of speed under the circumstances;

K. Violating the applicable rules, regulations and laws pertaining to the safe and proper operation of motor vehicles and/or tractor trailer units;

L. Failing to operate his Freightliner in accordance with the Federal Motor Carrier Safety Regulations;

M. Failing to properly control his Freightliner unit in light of the circumstances then and there existing, including night operations in the rain/snow;

N. Failing to make necessary and reasonable observations while operating his Freightliner;

O. Failing to take evasive action and/or failing to take appropriate and timely evasive action in order to avoid striking the vehicle operated by the Plaintiff;

P. Failing to timely and properly apply his brakes;

Q. Violating FMCSA Regulation 383 dealing with required knowledge and skills;

R. Consciously choosing to drive over the speed limit at night in the rain/snow;

S. Consciously choosing to use jake breaks in the rain/snow;

T. Consciously refusing to adjust speed in response to weather;

U. Consciously choosing to otherwise violate §392.14 regarding driving in hazardous conditions with extreme caution;

V. Failing to see and pay proper attention to other vehicles, including Plaintiff;

W. Failing to perform proper pre-trip inspection;

X. Violating both the written and unwritten policies, rules, guidelines and regulations of Defendant Cassidys Transfer;

Y. Failing to apprise himself of and/or abide by the Federal Motor Carrier Safety Regulations;

Z. Failing to apprise himself of and/or abide by the regulations and laws pertaining to the operation of commercial vehicles;

AA. Violating FMCSA Regulation 395 dealing with hours of service;

BB. Failing to adhere to the amount of driving hours limit;

CC. Striking Plaintiff's vehicle due to being on the road for more than the regulated amount of hours;

DD. Consciously choosing to drive over the regulated amount of hours;

EE. Consciously choosing not to pull his Freightliner over when the regulated amount of hours on the road was met;

FF. Acting with a conscious disregard for the rights and safety of Plaintiff; and

GG. Failing or consciously choosing not to follow the Commercial Driver's Manual as it relates to matching speed to road surface.

26. As a result of the above-stated acts and omissions, Plaintiff has suffered such harm as has been previously stated herein.

**WHEREFORE**, the Plaintiff, Christopher Hood, hereby seeks all damages allowed under the laws of the Commonwealth of Pennsylvania in addition to punitive damages from the Defendant, Cassidys Transfer, under the applicable statutes of the Commonwealth of Pennsylvania, New York and the Federal and Middle District Rules of Court.

## COUNT III

## NEGLIGENT and/or RECKLESS HIRING / SUPERVISION / RETENTION
## CHRISTOPHER HOOD v. CASSIDYS TRANSFER

27. The preceding paragraphs are incorporated herein by reference as though fully set forth.

28. Defendant Cassidys Transfer had an obligation/duty to hire, retain and supervise drivers who operate their vehicles in a safe manner.

29. Plaintiff was injured as a result of an incident related to Defendant Seller's driving, more specifically, Defendant Seller's unsafe driving.

30. The negligence, carelessness and/or recklessness of Defendant Cassidys Transfer, individually and through its various employees, servants, agents and/or workers including Defendant Sellers, consisted of the following:

    A.  Failing to properly train, monitor and/or supervise its employees, drivers and/or agents including Defendant Sellers;

    B.  Hiring and/or continuing to employ Defendant Sellers despite the fact that it knew or should have known that his driving record made him unfit to safely operate a commercial vehicle;

    C.  Hiring and/or continuing to employ Defendant Sellers despite the fact that it knew or should have known that his violation of the FMCSA hours of service made him unfit to safely operate a commercial vehicle;

    D.  Hiring and/or continuing to employ Defendant Sellers despite the fact that he had a propensity for driving violations;

    E.  Hiring and/or continuing to employ Defendant Sellers despite the fact that he had a propensity for violating "Rules of the Road" and FMCSR;

    F.  Failing to perform alcohol and/or drug tests after the Crash;

    G.  Failing to do preventability analysis as recommended by FMCSR;

    H.  Failing to have an appropriate disciplinary policy within the company;

I.   Hiring and/or continuing to employ Defendant Sellers despite the fact
     that it knew or should have known that his propensity to break the
     vehicular rules of various states could an/or would put the driving
     public at risk;

J.   Permitting Defendant Sellers to operate its Freightliner when it knew
     or should have known that he was not properly qualified and/or
     trained;

K.   Failing to train and/or properly train Defendant Sellers prior to
     allowing him to operate its Freightliner;

L.   Allowing Defendant Sellers to operate Freightliners in its possession
     when it knew or should have known that such operation posed a risk
     of danger to others lawfully on the roadway;

M.   Failing to adopt appropriate employee manuals and/or training
     procedures;

N.   Failing to enforce both the written and unwritten policies of Cassidys
     Transfer;

O.   Failing to ensure that its employees, drivers and/or agents were aware
     of and complied with the written and unwritten policies of Cassidys
     Transfer;

P.   Failing to implement and/or enforce an effective safety system;

Q.   Failing to ensure that its management personnel and drivers were
     aware of the requirements and dictates of the FMCSA regulations;

R.   Failing to ensure that its employees, drivers and/or agents complied
     with the provisions of the FMCSA regulations;

S.   Failing to ensure that its employees, drivers and/or agents were aware
     of and complied with the rules, laws and regulations pertaining to and
     governing the operation of commercial vehicles;

T.   Violating the applicable rules, laws and regulations pertaining to and
     governing the operation of commercial vehicles;

U.  Failing to monitor and/or regulate its drivers' actions;

V.  Failing to monitor and/or regulate its drivers' hours;

W.  Failing to have an auditing system in place to audit its drivers' logs, or if they did have a system in place, they failed to utilize the system properly;

X.  Failing to use a 3rd party vendor to audit their drivers' logs, or if they did use a 3rd party vendor, they failed to use it appropriately;

Y.  Failing to have a policy or mechanism in place to address cumulative fatigue in its drivers;

Z.  Placing more emphasis on profits than on the safety of its drivers and the motor public;

AA. Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

BB. Failing to act upon and remedy known violations of FMCSA regulation 395;

CC. Failing to act upon and remedy known violations of FMCSA regulation 383;

DD. Failing to act upon and remedy known violations of industry standards;

EE. Acting in conscious disregard for the rights and safety of the Plaintiff;

FF. Failing to have appropriate policies and procedures with regard to the hiring of its drivers;

GG. Failing to follow the written and/or unwritten policies and procedures with regard to the hiring of its drivers;

HH. Failing to have appropriate policies and procedures with regard to the monitoring of its drivers; and

II. Failing to follow the written and/or unwritten policies and procedures with regard to the monitoring of its drivers.

31. As a result of the above-stated acts and omissions, Plaintiff has suffered such harm as has been previously stated herein.

**WHEREFORE**, the Plaintiff, Christopher Hood, hereby seeks all damages allowed under the laws of the Commonwealth of Pennsylvania in addition to punitive damages from the Defendant, Cassidys Transfer, under the applicable statutes of the Commonwealth of Pennsylvania, New York and the Federal and Middle District Rules of Court.

Respectfully submitted,

FELLERMAN & CIARIMBOLI LAW, P.C.

BY:*s/ Molly D. Clark*

EDWARD J. CIARIMBOLI, ESQUIRE
MOLLY DEMPSEY CLARK, ESQUIRE
Attorney for the Plaintiff

# EXHIBIT "B"



## KJL Safety and Claims Services LLCKJL Safety and Claims Service, LLC
176 Merion Drive
Limerick, PA 19468    kenlacey@gmail.com

May 16, 2018

Edward Ciarimboli, Esq.
Fellerman and Ciarimboli Law
183 Market Street, Suite 200
Kingston, PA 18704

RE:     Christopher Hood v. Terrence Sellers and Cassidy's Transfer

United States District Court for the Middle District of Pennsylvania;

Case No: 3:17 -cv- 00275

Dear Attorney Edward Ciarimboli,

I have been retained to provide my opinions in the above-styled matter to advise whether the conduct of Cassidy's Transfer (Hereafter referred to as "Cassidy") and their driver Terrence Sellers (Hereafter referred to as "Sellers") contributed to the cause or relation with the injuries to Christopher Hood (Hereafter referred to as "Hood"). My task was to apply my expertise and experience regarding safe commercial motor vehicle operations to determine if unsafe practices played a role in the crash and to determine if anyone acted in an unsafe manner.

All my opinions expressed herein are to a reasonable degree of professional certainty regarding the customs and practices for safe motor vehicle operations in the transportation industry as well as my combined education, experience and training in the commercial transportation industry. My education, training and experience are set forth in the attached curriculum vitae.

By way of background, I am employed with KJL Safety and Claims Services LLC in Limerick, Pennsylvania as a Safety and Claims Consultant. KJL Safety and Claims Services LLC provides safety services to the transportation industry. As a Safety Consultant, my job is to consult with individuals and companies of all types and sizes that operate commercial motor vehicles on the highways.

One of the services that KJL Safety and Claims Services LLC offers its clients is post-crash review for prevention, litigation, and other uses. This service requires an assessment of the overall safety situation involved in the incident, both to evaluate what safe or unsafe practices had an impact so that changes may be made in safety practices or so that the cause from a safety practices standpoint is determined and acted upon. I may also be called upon to make similar analysis of situations where litigation is anticipated or ongoing which most often calls for post-crash review like what we do for industry clients seeking our advice.

I am familiar with the safe practices employed by companies that operate motor vehicles on the highways and that are applicable to commercial motor vehicles. In addition to my knowledge of federal and state regulations and requirements in the transportation industry, I have experience in the development and implementation of effective safety management controls with the specific purpose of establishing programs designed to improve overall vehicular safety through compliance and good safety practices.

Based upon my training and experience with developing and implementing driver safety programs for companies, I am familiar with safety rules that are required to be followed by companies with US Department of Transportation (DOT) fleets, as well as Non-DOT fleets. Safety rules in the fleet industry come from many different sources, including traffic laws, safety laws, regulations, industry standards, and customary practices. Safety rules are frequently not written rules or laws. Safety rules have been developed and become generally accepted over time to the point where the safety rules as set forth in this report are now recognized as standards of care and customs in the industry. Safety rules change over time often as the result of the industry reaction to driver safety issues that result in crashes and injures. The statistics on crashes over the years and the studies showing defensive driving techniques reducing crashes, has led to the current safety rules for DOT and non-DOT fleets.

I was hired to evaluate Cassidy's driver safety program, and its driver training program relative to United States Federal and State regulations, whether the programs follow the regulatory requirements. I also do this same type of evaluation for companies who want to develop or improve their safety programs. I was also hired to evaluate whether Sellers violated the safety rules of the road. The method I used in this case is used in litigation and is also used in consulting with companies on fleet safety. The method to evaluate such driver safety program is generally accepted and followed by experts such as myself in fleet safety in litigation and in consulting. The method is to review available data which at a minimum include crash reports, the company's existing driver safety program, and the driver's file. The method is then to review deposition testimony taken in the case as well as available driver and company related discovery. Then after such review, the method is to determine whether any safety rules or regulations have been followed or violated and determine whether any violations resulted in the crash in question. I followed this methodology in this case.

## BACKGROUND

This accident occurred on I-81, near The Town of Cortlandville, Cortland County, NY, at/or about 9:08 PM. The accident involved a tractor trailer operating on behalf of Cassidy Transfer, an Ontario,

2

Canada motor carrier ("Cassidy"), driver by its driver Terry Sellers ("Sellers") and a 2001 Acura driven by Christopher Hood ("Hood"). Hood suffered serious injuries because of the collision.

In preparation of my report, I have reviewed the following materials:

1. New York Accident Exchange Form
2. Complaint
3. Scene photos
4. Communications from Zurich, insurance company for Cassidy's Transfer
5. Interrogatories Addressed to Plaintiff
6. Quebec Medical reviews regarding Sellers for his commercial drivers license
7. Objections and Answers to Plaintiff's requests for production of documents on behalf of Defendant Cassidy's Transfer
8. Objections and answers to plaintiff's interrogatories by Defendants Cassidy's Transfer and Terrence Sellers
9. Objections and Answers to Plaintiff's requests for production of documents on behalf of Defendant Terrence Sellers
10. Objections and Answers to Interrogatories on behalf of Defendants Cassidy's Transfer and Terrence Sellers
11. Drug Test results for Defendant Terrence Sellers
12. Copy of Commercial Driver's License for Defendant Terrence Sellers
13. Copy of registration and insurance card for the tractor driven by Defendant Terrence Sellers at the time of accident registered to Defendant Cassidy's Transfer
14. Deposition of Donna Williston
15. Deposition of Tim Jones
16. Maintenance reports and annual inspection certificate for Defendant Terrence Sellers tractor trailer
17. Physicals for Defendant Terrence Sellers
18. Deposition of Brian Lehman
19. Cassidy Transfer violation reports for Terrence Sellers
20. Motor Vehicle Records of Terrence Sellers
21. Deposition for Daniel Robinson
22. Deposition for Terrence Sellers
23. Driver Logs of Terrence Sellers
24. Driver Log Violation Reports of Terrence Sellers
25. Social Media & Internet Report of Cassidy Transfer
26. Towing and repair receipts for the Commercial Motor Vehicle driven by Defendant Terrence Sellers
27. Safety violation summary reports issued by Cassidy Transfer containing an accounting of Terrence Sellers missing logs
28. Employee statement of accident given by Sellers

Based upon my education, experience, training, and the evaluation of the materials provided to me, as well as my knowledge and familiarity with federal and state regulations and transportation industry custom and practices, I have the following opinions:

The Defendant, Cassidy, although an Ontario Canada based motor carrier, was a DOT private motor carrier having been assigned a U. S. DOT# 163123. Cassidy, as with all interstate, Intrastate and foreign motor carriers operating in the United States, are under the regulatory authority of Title 49 CFR the Federal Motor Carrier Safety Regulations (FMCSR), which has been adopted by the State of New York, as required in Title 49 Parts 383 and 390.5. Sellers was an authorized driver for Cassidy and as such was required to comply with the applicable safety regulations.

On January 18, 2016, Sellers, while driving a commercial motor vehicle for Cassidy failed to demonstrate the proper knowledge and skills necessary to safely operate a commercial motor vehicle as required by the New York Commercial Drivers Manual and Federal Motor Carrier Safety Regulations (FMCSR).

Sellers failed to make the safest choice and stop driving until the winter storm had passed (See Sellers deposition taken March 27, 2018 P 40-41). He admittedly "drove into the storm". This was not only in violation of FMCSR 392.14, to stop driving until it's safe to resume, but also the directive of Cassidy (See Cassidy owner and manager Dan Robinson deposition taken March 27, 2018 P 77-78) to "get off the road" where extreme caution needs to be taken. By Sellers' own testimony, he failed to exert extreme caution. FMCSR 392.14 (extreme caution in hazardous conditions) this section contemplates that other drivers on the road may lose control, as did Hood, which is exactly why a professional driver such as Sellers must be exercising extreme caution to avoid a foreseeable incident with a motorist who loses control. Both Sellers and Robinson admitted that Sellers failure to exert extreme caution was both dangerous and reckless.

Sellers continued driving into the winter storm (See Sellers deposition taken March 27, 2018 Page 52). Where he drove in hazardous conditions, he then had to comply with FMCSR 392.14 and NY Commercial Drivers Manual Parts 2.6.2, 2.6.4 and 2.8.4. Pursuant to these regulations, he failed to use proper:

a) visual search methods and evaluate surrounding conditions;
b) speed management consistent with stopping distance and visibility;
c) space management to allow a cushion between himself and others;
d) hazard perceptions and anticipate the actions of other motorists;
e) not drive at a speed overtaking the allowable stopping distance beyond the sight distance created by the headlights of his vehicle at night.

Sellers' failure to adhere to the above regulations was both reckless and dangerous. Both Sellers and Robinson agreed the Sellers' failure to follow these rules was both reckless and dangerous. (See Sellers deposition taken March 27, 2018 P 30-32 and Robinson deposition taken March 27, 2018 P 75-76).

Additionally, Sellers admitted if he would have followed these rules, he would have had enough time and distance to have avoided the accident. (See Sellers deposition taken March 27, 2018 P 18-19 and P 19-20)

Although Sellers was an owner operator, FMCSR 383 and 390.5 defines Sellers as an employee of Cassidy as he was operating on behalf of Cassidy at the time of accident. As an employee, Cassidy would be responsible for the actions of Sellers.

Cassidy was negligent in hiring Sellers. Cassidy failed to investigate the medications taken by Sellers. Brian Lehman, Safety manager for Cassidy at the time of accident (Hereafter referred to as "Lehman") didn't know how many medications Sellers was taking (See Lehman Dep P 73-74). Robinson stated Cassidy relied solely upon the doctor completing Sellers' physical to qualify him (See Robinson March 27, 2018 deposition P 127-128). FMCSR 391 states that the motor carrier is responsible for ensuring medically qualified driver operate interstate commerce. Sellers' last physical prior to the accident occurred on February 24, 2014, approximately 23 months prior to the accident. By its failure to require Sellers to get an annual physical, Cassidy allowed a driver with an expired physical to operate in the United States. The FMCSA published the guidance provided below regarding drivers, such as Sellers, with Type 2 diabetes. There is a degree of clinical judgement, but the examiner would have to consider Seller is an asthmatic, diabetic, taking: Invokana-1 injection daily for diabetes, Victoza, Mavik, Uniphy, Montelukfast, Tera Salbutamol, Advarig Diskus, and Gliclazid. All these medications have a wide range of potential side effects. That, combined with one of the medications being injected, should have resulted in the physical being annual, or less, if for no other reason to monitor Sellers to insure he was able manage them without his operating a commercial motor vehicle being impaired. Cassidy should have also been aware of Sellers medical conditions and tracked them due to Sellers, on both May 2011 and May 2014, having had a medical prohibition posted on his CDL by a Quebec Medical review. Cassidy should have required the annual physical where the medical examiner did not. Their failure to do so was both reckless and dangerous.

May a driver who has non-insulin treated diabetes mellitus (treated with oral medication) be certified for 2 years?

In all cases, clinical judgment is required. The Medical Examiner decides if the driver's diabetes is adequately controlled, which determines certification, length of certification or disqualification. FMCSA guidelines recommend performing annual examination for vision, neurological function and cardiovascular disease, including hypertension. In general, the diabetic driver should have annual re-certification examinations.

Last Updated: April 1, 2014

Cassidy negligently supervised Sellers. Lehman admitted to having no knowledge that Cassidy driver, including Sellers, had responsibility for having of FMCSR 392.14 or the CDL manual. As a result, no training was done for either. Seller agreed that if he would have been trained in both FMCSR 392.14 and NY CDL 2.6.2, 2.6.4 and 2.8.4., he would have applied them and either had gotten off the road, or, where he continued to drive, he would have slowed his speed as required and had enough time and distance to have avoided the accident. (See Sellers deposition taken March 27, 2018 P 18-19). Lehman stated his lack of knowledge that the CDL manual applied to Cassidy's drivers, including

Sellers, resulted from the ownership of Cassidy not advising him of same. Ultimately, the ownership prohibited full compliance with United States regulations. (See Lehman deposition P 47-51) The failure of Cassidy to properly train was both reckless and dangerous.

As Safety Manager Lehman was only authorized to make recommendations to the Safety Committee. He did not have authority to carry out direct discipline (See Lehman deposition P 108-109,120-121 and 132). We do not have copies of any of the above 11 violations provided above, only Cassidy's cover letter.

Cassidy failed to comply with 395.8(k). It had no supporting documents (Tolls, fuel receipts with times or cell phone records). This combined with the 15 logs over the 5 months preceding the accident Sellers failed to turn in that Cassidy appears to have taken no action to address (See Lehman deposition P 141-142). In my experience, when some, but certainly not all, drivers cannot hide their hours of service violations, they may "drop", or not submit, their logs randomly to hide their violating the hours of service regulations. Cassidy, as a long-standing motor carrier would, or should know this. Despite that, Cassidy failed to require Sellers to operate on its behalf without submitting the missing logs as required by FMCSR 395.8. 395.8 requires FMCSR 395.8 requires drivers to "Submit the driver's record of duty status to the motor carrier within 13 days of the 24-hour period to which the record pertains". Cassidy negligently retained Sellers, who blatantly violated the FMCSR by not submitting required logs and taking no action to address Sellers' behavior than to write a warning letter at times. Sellers should have been terminated for repeatedly violating company policy and FMCSR requirement to turn in all logs within the required time limit. By not terminating Sellers, Cassidy encouraged Sellers non-compliant, reckless and dangerous behavior. This is further illustrated by Lehman testimony wherein he states Cassidy routinely lies to its Customs Broker about its projected delivery times for its cross-border loads (See Lehman deposition P 90-97). This statement came in response to him being pressed on Sellers being 197 miles from his delivery point in Fort Erie, Ontario with a projected delivery time of 10:00 PM, when the accident occurred at 9:00 PM. Either Lehman was telling the truth, and Cassidy routinely falsifies customs documents, which goes to its general lack of concern with any rule and regulation as a company, which would trickle down to its drivers, or Sellers was running incredibly behind schedule which would be a money driven basis, for both Sellers and Cassidy, as to why Sellers recklessly and dangerously didn't get off the road, drove into a winter storm, didn't slow to the required speed and subsequently had an accident with Hood. It should also be noted Cassidy made no effort to make certain Sellers complied with its policy to get off the road.

**Summary**

Sellers admitted to not following FMCSR 39.14 and the NY Commercial Drivers Manual. Lehman admitted to not training Sellers in any aspect of the NY Commercial Drivers manual as ownership hadn't told him about it being required. Lehman relied solely on Cassidy's ownership for what was required by way of training. Sellers also admitted in his failing to follow these regulations, he didn't exercise extreme caution, which, would have meant to "get of the road", as stated by Robinson, owner and manager of Cassidy. In short, Sellers should not have been on the road at the time of accident. Further, where he was on the road, he should have been driving at a significantly reduced

speed. Both Robinson and Sellers admit these actions by Sellers, or lack thereof, were both reckless and dangerous.

Cassidy failed to terminate Sellers despite repeated violations, not submitting record of duty status(logs) required by FMCSR, not having an annual physical completed.  Cassidy also made no effort to make certain Sellers stopped driving until the storm had passed.

The recklessness by both Cassidy, and its driver Sellers, significantly contributed to the accident on January 18, 2016 with Mr. Hood. Further, had Sellers exercised extreme caution, or Cassidy required Sellers to comply with its "plan" and caused Sellers to get off the road, this accident would not have occurred.

Sincerely,

KJL Safety and Claims Service, LLC

Ken Lacey

# EXHIBIT "C"



**KJL Safety and Claims Services LLC**
176 Merion Drive
Limerick, PA 19468   kenlacey@gmail.com

June 4, 2018

Fellerman and Ciarimboli Law
183 Market Street, Suite 200
Kingston, PA 18704

RE:    Christopher Hood v. Terrence Sellers and Cassidy's Transfer

       United States District Court for the Middle District of Pennsylvania;

       Case No: 3:17 -cv- 00275

Dear Attorney Edward Ciarimboli,

Please accept this supplement to our May 16, 2018 report regarding the above matter to address the new information provided as a result of the deposition of Trooper Matthew Volpe.

The documents reviewed for this supplemental report, in addition to those reviewed in the initial report, are:

Deposition of Trooper Matthew Volpe

Additional police report supplied by Trooper Matthew Volpe at his deposition

JJ Keller Transportation FMCSA Compliance Manual (For the United States)

JJ Keller Transport Compliance for Canada

Quebec Driver Manual Driving A Heavy Vehicle

The materials and deposition of Trooper Volpe provide further evidence, as follows, that Sellers should not have been driving at the multiple failures which occurred on behalf of both Sellers and Cassidy on the night of accident. A review of the police report supplied by Trooper Volpe at his deposition confirms that, at the time of accident, the road surface condition was "Snow/Ice" and the weather was "Snow".  Also, approximately 10 miles prior to the accident site, is a warning highway sign which reads "ICY ROADS AHEAD" MUTCD 2004 edition (latest) "The ICE (W8-5aP) plaque should be used only where it has been determined that recurrent pavement icing is in an isolated section of otherwise clear roadway constitutes an unusual hazard". The ICE (W8-5aP) plaque is not intended for use in conjunction with normal wintertime storm-related snow or ice conditions. Despite the weather conditions, the road surface conditions and the warning sign the road surface ahead that night, Sellers continued forward at the same speed.  Trooper Volpe confirmed that Sellers should have demonstrated "extreme caution" (Volpe deposition P 25) as a result of the weather/road conditions the night of accident and failed to do so. Trooper Volpe also confirmed Sellers should have reduced his speed as required by 2.6.2 of the New York Commercial Driver Manual and failed to do so (Volpe deposition P 31).

In terms of Cassidy's failure to supervise and train Sellers properly, during Robinson's deposition (See P 63-64, 79 and 80) he repeatedly references JJ Keller (A widely known and used provider of regulatory manuals and training manuals, materials, videos and direct training) as the provider of Cassidy's training materials.  Where Cassidy had properly utilized Keller's materials, Sellers would have been trained on 392.14, or hazardous driving in general. The Transportation FMCSA Compliance Manual (For the United States) (P 806) states "It may be common sense, but the regulations actually require a driver to slow down and use "extreme caution" in hazardous conditions, such as snow, ice, sleet, mist, rain…". Even more importantly, (P 814) 392.14 Hazardous Conditions; Extreme Caution DOT Interpretation 392.14 Question 1 provides the clarification that the driver is responsible for safe operation and the decision to cease operations if conditions are hazardous. However, based upon testimony of Sellers, he was not trained on FMCSR 392.14 and didn't have this level of empowerment. Also, through testimony of both Robinson and Lehman, Cassidy was unaware of 392.14 and subsequently did not train Sellers regarding its content. This is inconsistent with Robinson's statement that Cassidy used Keller materials for training. If they had done so, they would have noted section 392.14, and its directive. Even where Cassidy had failed to properly train Sellers with the Keller materials, Sellers should have been familiar with the Quebec Driver Manual Driving A Heavy Vehicle (P 141-142) which, under Factors Influencing Braking distance, states under "Vehicle Speed" "The faster you go, the greater the distance it will take you to come to a stop".  Under "Road Conditions" it states, "Braking distance is at least double on icy pavement as compared to on dry pavement". Lastly, under "Causes of Skidding", (P 166) it states" Most of the time, skidding is caused by

travelling too fast on damaged, slippery or snow-covered road surfaces." None of the above was conveyed to Sellers at all, or in a manor which he implemented on the night of the accident.

Sellers had the authority, and was specifically charged, under various regulations to stop driving, or reduce his speed to at least a third, or greater, of the posted speed limit. He failed to do so, despite the ongoing onslaught of the snow storm. Sellers further continued to drive, failing to exercise "extreme caution" after having driven past a sign warning that there would be "ICY ROADS AHEAD", well in advance of where the accident occurred. Sellers multiple failures were both dangerous and reckless.

Cassidy failure to supervise and train Sellers in critical parts of the JJ Keller training materials related to Hazardous driving in FMCSR Section 392.14 as above. By not properly training sellers to recognize the weather conditions, icy road, the ICY ROAD AHEAD warning road sign as hazardous conditions, Cassidy denied Sellers the knowledge that he was empowered, and charged by regulation, to exercise extreme caution and either stop driving or reduce his speed significantly below the 50-55 mph driven at the time of accident. Allowing a commercial driver to operate on their behalf without proper training, specifically regarding proper braking, driving in hazardous conditions and speed management was both reckless and dangerous.

Sincerely,

Ken Lacey

3